UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

RUTH E. HOCHBERG,

              Plaintiff,

              v.

LINCARE, INC.,

              Defendant.

NO. CV-07-0031-EFS

**ORDER GRANTING AND DENYING IN PART DEFENDANT'S MOTION TO STRIKE AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

A telephonic hearing was held in the above-captioned matter on April 23, 2008. Christine M. Weaver appeared on behalf of Plaintiff Ruth E. Hochberg; John R. Nelson appeared on behalf of Defendant Lincare, Inc. Before the Court were Defendant's Motion to Strike (Ct. Rec. 91) and Motion for Summary Judgment (Ct. Rec. 52). After reviewing the submitted material, relevant authority, and hearing oral argument, the Court is fully informed. The Court grants and denies in part Defendant's motion to strike and grants Defendant's summary judgment motion. The reasons for the Court's Order are set forth below.

ORDER ~ 1

# I. Background

Unless otherwise indicated, the following facts are undisputed or presented in the light most favorable to Plaintiff, the nonmoving party:

Plaintiff began working for Defendant as a Patient Account Coordinator ("PAC") in December 1998. (Ct. Rec. 1 at 2.) There were approximately sixty (60) employees in Defendant's Spokane office; nearly all were women of childbearing age. (Ct. Recs. 56-2 at 34-35; 56-3 at 89.) In November 2000, Plaintiff was promoted to the position of accounts receivable supervisor. *Id.* Plaintiff informed Defendant she was pregnant in October 2005. (Ct. Rec. 95 at 1.) Eden Stotts, Plaintiff's supervisor, was very happy for Plaintiff. (Ct. Rec. 56-2 at 47.)

Later in October 2005, Ms. Stotts discovered that one of Plaintiff's employees, Don Johnson, had not been doing his job for sixty (60) days. (Ct. Rec. 56-3 at 95.) Monitoring employees is a fundamental aspect of Plaintiff's supervisory role. *Id.*

From October 2005 (when Plaintiff announced her pregnancy) until December 2005, there were no issues in how Plaintiff was treated. (Ct. Rec. 95 at 1.) On December 2, 2005, Ms. Stotts met with Plaintiff to discuss several performance related issues. (Ct. Rec. 56-2 at 23.) At the meeting, Ms. Stotts stated that: 1) Plaintiff was not doing her job as a supervisor; 2) Plaintiff was in Connie Marsh's office one to two hours a day, and it was interfering with Ms. Marsh's ability to complete her job responsibilities; 3) she felt like Plaintiff was just collecting a paycheck; and 4) Plaintiff had not used the proper tools to train her

PACs. (Ct. Rec. 56-2 at 23.) Plaintiff acknowledged that some of Ms. Stotts' concerns were legitimate. (Ct. Rec. 56-2 at 36.)

On December 6, 2005, Plaintiff failed to communicate time-sensitive information to Ms. Stotts even though Ms. Stotts specifically asked about the information that very day. (Ct. Rec. 56-2 at 20, 38.) Ms. Stotts confronted Plaintiff about this failure the next day in Ms. Marsh's office. (Ct. Rec. 56-3 at 80.) Ms. Stotts, while stern, did not yell. *Id.* The confrontation resulted in Plaintiff receiving a verbal warning. (Ct. Rec. 79 at 10) Ms. Marsh, Plaintiff's friend and confidant, recognized that the conversation upset Plaintiff. (Ct. Recs. 56-2 at 6; 79 at 8.)

On December 8, 2005, Plaintiff and Ms. Stotts met again and had "a very pleasant conversation" regarding Plaintiff's failure to communicate the time-sensitive information two days earlier. (Ct. Rec. 56-3 at 48.) This conversation resulted in Ms. Stotts taking over the particular project Plaintiff was working on. *Id.* at 49.

According to Plaintiff, nothing noteworthy happened in how she was treated between December 8, 2005, and February 15, 2006. (Ct. Rec. 56-2 at 54, 59.) There was one instance in mid-January when Ms. Stotts asked Plaintiff if she had trained one of her new employees as instructed. (Ct. Rec. 56-2 at 54.) Plaintiff had not; instead, she had delegated the responsibility to another employee. *Id.* Ms. Stotts' inquiry, however, was very pleasant and professional - there were no raised voices. *Id.* at 55.

ORDER ~ 3

1      On February 15, 2006, Plaintiff again failed to communicate
2 time-sensitive information to Ms. Stotts. *Id.* at 59-64. Ms. Stotts
3 demoted Plaintiff to an entry-level PAC position on February 21, 2006.
4 (Ct. Rec. 79 at 11.) The next day, Plaintiff faxed Defendant a doctor's
5 note saying that she should not return to work. (Ct. Rec. 56-2 at 68.)
6 Defendant mistakenly advised Plaintiff that her pregnancy leave would
7 begin to run on the day she left. (Ct. Rec. 56-5 at 111.)

8      On May 17, 2006, Defendant mistakenly advised Plaintiff that her
9 leave time had expired and she was no longer considered an "active
10 employee." (Ct. Rec. 56-6 at 114.) Realizing it had miscalculated
11 Plaintiff's leave time, Defendant informed Plaintiff she would be able
12 to return to her original job. (Ct. Rec. 56-8 at 120.) Plaintiff
13 declined to return to work. (Ct. Rec. 56-2 at 70.)

14                          **II. Discussion**
15 **A. Summary Judgment Standard**

16      Summary judgment is appropriate if the "pleadings, depositions,
17 answers to interrogatories, and admissions on file, together with the
18 affidavits, if any, show that there is no genuine issue as to any
19 material fact and that the moving party is entitled to judgment as a
20 matter of law." Fed. R. Civ. P. 56(c). Once a party has moved for
21 summary judgment, the opposing party must point to specific facts
22 establishing that there is a genuine issue for trial. *Celotex Corp. v.*
23 *Catrett*, 477 U.S. 317, 324 (1986). If the nonmoving party fails to make
24 such a showing for any of the elements essential to its case for which
25 it bears the burden of proof, the trial court should grant the summary
26 judgment motion. *Id.* at 322. "When the moving party has carried its

ORDER ~ 4

1  burden of [showing that it is entitled to judgment as a matter of law],

2  its opponent must do more than show that there is some metaphysical doubt

3  as to material facts.  In the language of [Rule 56], the nonmoving party

4  must come forward with 'specific facts showing that there is a genuine

5  issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

6  475 U.S. 574, 586-87 (1986) (citations omitted) (emphasis in original

7  opinion).

8      When considering a motion for summary judgment, a court should not

9  weigh the evidence or assess credibility; instead, "the evidence of the

10 non-movant is to be believed, and all justifiable inferences are to be

11 drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255

12 (1986).  This does not mean that a court will accept as true assertions

13 made by the non-moving party that are flatly contradicted by the record.

14 *See Scott v. Harris*, 127 S. Ct. 1769, 1776 (2007) ("When opposing parties

15 tell two different stories, one of which is blatantly contradicted by the

16 record, so that no reasonable jury could believe it, a court should not

17 adopt that version of the facts for purposes of ruling on a motion for

18 summary judgment.").

19 **B. Motion to Strike**

20     As a threshold matter, Defendant moves to strike several materials

21 submitted by Plaintiff in opposition to Defendant's summary judgment

22 motion.  Each submitted material will be addressed in turn.

23     **1. Stacey Maley**

24     Defendant seeks to strike several statements made by Stacey Maley,

25 a non-supervisor, including her testimony that "[Plaintiff] was always

26 able to train, mentor, guide and lead" and that Ms. Stotts' conduct

toward Plaintiff changed "after [she] announced her pregnancy" because these statements lack foundation.  (Ct. Rec. 101 at 2.)  Plaintiff responds that personal knowledge can be inferred from the affidavit itself and that Ms. Maley worked for Defendant for years and was aware of Plaintiff's job duties.  (Ct. Rec. 98 at 3.)

Federal Rule of Civil Procedure 56(e) states, in pertinent part:

> A[n] . . . affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated.

FED. R. CIV. P. 56(e)(1) (2008).  Under some circumstances, the personal knowledge and competency requirements may be inferred from the affidavit itself.  *See Barthelemy v. Air Line Pilots Ass'n*, 897 F.2d 999, 1018 (9th Cir. 1990) (finding corporate officers are presumed to know certain information about their corporation).

Here, Ms. Maley's personal opinions about Plaintiff's qualifications are admissible.  These are personal opinions, however, and do not create a genuine issue of material fact as to whether Plaintiff was meeting Defendant's legitimate employment expectations for a supervisor because Ms. Maley was not a supervisor and did not know Defendant's legitimate employment expectations for a supervisor.

Moreover, Ms. Maley transferred from Plaintiff's department in April 2005 (six months before the pregnancy announcement) and left Defendant's employ in September 2005 (one month before the pregnancy announcement).  (Ct. Rec. 90 at 2.)  Based on this time line, Ms. Maley also lacks personal knowledge to comment on how Ms. Stotts treated Plaintiff after she announced her pregnancy.  Accordingly, the Court strikes all of Ms.

ORDER ~ 6

Maley's statements made after she left Defendant's employ in September
2005.

### 2. Bonnie Andrews

Defendant seeks to strike several statements made by Bonnie Andrews,
a non-supervisor, including her testimony that "[she] thought [Plaintiff]
was a very good supervisor" and that "I (Ms. Andrews) did not and do not
think [Plaintiff] deserved to be fired or demoted but I thought that was
happening" because these statements lack foundation. (Ct. Rec. 83 at 2.)
Ms. Andrews' personal opinions about Plaintiff's qualifications are
admissible. But similar to Ms. Maley, Ms. Andrews is not a supervisor
and her statements, while admissible, do not create a genuine issue of
material fact because she lacks personal knowledge as to whether
Plaintiff was meeting Defendant's legitimate employment expectations for
a supervisor. Defendant's motion to strike Ms. Andrews' statements is
denied.

### 3. Denise Knapp

Defendant seeks to strike certain statements made by Denise Knapp,
a non-supervisor, including her testimony that Plaintiff knew what she
was doing as a supervisor because these statements lack foundation.
(Ct. Rec. 80, Ex. 1 at 5.) Like Ms. Maley and Ms. Andrews, Ms. Knapp was
not a supervisor and her statements, while admissible, do not create a
genuine issue of material fact because she lacks personal knowledge as
to whether Plaintiff was meeting Defendant's legitimate employment
expectations for a supervisor. Defendant's motion to strike Ms. Knapp's
statements is denied.

**C. Pregnancy Discrimination Act Claim**

The Pregnancy Discrimination Act ("PDA") amends Title VII and makes it an unlawful employment practice "to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ." 42 U.S.C. § 2000e-2(a)(1).  The term "because of sex" includes "because of or on the basis of pregnancy, childbirth, or related medical conditions . . . ."  42 U.S.C. § 2000e(k). An employer violates Title VII if a protected characteristic is a "motivating factor" in the employment action; it need not be the only factor.  42 U.S.C. § 2000e-2(m).

PDA claims are governed by the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  Under the *McDonnell Douglas* burden-shifting analysis, a plaintiff must first establish a prima facie discrimination case.  *Llamas v. Butte Cmty. Coll. Dist.*, 238 F.3d 1123, 1126 (9th Cir. 2001).  If the plaintiff establishes a prima facie case, then the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for its adverse employment action. *Id*.  To prevail, the plaintiff must then show that the employer's purported reason for the adverse employment action is merely a pretext for a discriminatory motive.  *Id*.  Although the burden shifts back and forth between the parties, the plaintiff bears the ultimate burden of demonstrating that the defendant engaged in intentional discrimination. *See Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 143 (2000) (citations omitted).

ORDER ~ 8

### 1. Prima Facie Case

Defendant argues that Plaintiff has not established a prima facie case because she did not perform her job adequately and cannot demonstrate that similarly situated employees were treated more favorably. (Ct. Rec. 53 at 6.) Plaintiff responds that she did perform her job adequately and that other similarly situated employees were treated more favorably because no other supervisor had been terminated for "inefficiencies in her performance." (Ct. Rec. 78 at 5.)

To establish a prima facie discrimination case, a plaintiff must show that (1) she belongs to a protected class; (2) she was performing according to her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) other employees with similar qualifications were treated more favorably. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1062 (9th Cir. 2002) (citations omitted). This showing is minimal and does not even need to rise to the level of a preponderance of the evidence. *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994); *see also Sischo-Nownejad v. Merced Cmty. Coll. Dist.*, 934 F.2d 1104, 1110-11 (9th Cir. 1991) ("The amount [of evidence] that must be produced in order to create a prima facie case is very little.") "Establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981).

Here, Plaintiff has not established a prima facie case because Plaintiff cannot carry her burden on factors two and four.

ORDER ~ 9

**i. Factor Two - Meeting the Employer's Legitimate Expectations**

Plaintiff asserts two facts to demonstrate that she was meeting Defendant's legitimate expectations: 1) there is no written evidence of disciplinary action against her until after she became pregnant, and 2) in her opinion, she was doing fine at her job until she became pregnant. (Ct. Recs. 78 at 4; 79 at 12.)[1]  Defendant points to the following evidence to support Plaintiff's demotion for performance based reasons:

1)    Plaintiff's primary communication method with her PACs was verbal. (Ct. Rec. 56-2 at 11.)  Before Plaintiff's pregnancy, and on more than one occasion, Ms. Stotts reminded Plaintiff to communicate to her PACs in writing, because "if it wasn't in writing, [Ms. Stotts] could not tell that it had been done." (Ct. Rec. 56-2 at 11.)

2)    In July or August 2005, before Plaintiff's pregnancy announcement, Ms. Stotts expressed concerns to Plaintiff that

---

[1]Plaintiff also cites to the testimony of Ms. Maley, Ms. Knapp, and Ms. Andrews, three employees that worked under her and testified that Plaintiff knew her job and was a good supervisor. (Ct. Rec. 78 at 5.) As discussed above, these statements, while admissible do not create a genuine issue of material fact as to whether Plaintiff was meeting Defendant's legitimate employment expectations for a supervisor. *See* Federal Rule of Civil Procedure 56(e) (requiring affidavits to be made on personal knowledge by an individual competent to testify on the matter).

ORDER ~ 10

1    she was relying too heavily on work from her employees rather
2    than doing the work herself.  (Ct. Rec. 56-2 at 15.)

3    3)    In October 2005, Ms. Stotts discovered that one of Plaintiff's
4          employees had not been doing his job for sixty (60) days.
5          (Ct. Rec. 56-3 at 95.)  Monitoring employees is a fundamental
6          aspect of Plaintiff's supervisory role.  *Id.*

7    4)    On December 6, 2005, Plaintiff failed to communicate
8          time-sensitive information to Ms. Stotts.  (Ct. Rec. 56-
9          2 at 20.)

10   5)    In early January 2006, Plaintiff failed to train one of her new
11         employees as instructed; instead, she delegated the
12         responsibility to another employee.  (Ct. Rec. 56-2 at 54.)

13   6)    In mid-February, Plaintiff again failed to communicate
14         time-sensitive information to Ms. Stotts.  (Ct. Rec. 56-2 at
15         54, 59.)

16   7)    Plaintiff was in Ms. Marsh's office one to two hours a day
17         seeking help with her job duties, and it was interfering with
18         Ms. Marsh's ability to complete her job responsibilities.
19         (Ct. Rec. 56-2 at 23; 56-3 at 85.)

20   These facts, taken together, buoy Defendant's assertion that Plaintiff
21   did not meet its legitimate employment expectations.  Tellingly, Ms.
22   Stotts was not the only individual critical of Plaintiff's performance.
23   Dennis Rich and Phil Stafford worked for Defendant as sales managers.
24   (Ct. Rec. 56-3 at 83.)  Long before Plaintiff's pregnancy, both expressed
25   their unwillingness to work with Plaintiff because she did not know
26   anything.  (Ct. Recs. 56-3 at 83; 56-4 at 104.)

Ms. Marsh, Plaintiff's friend, confidant, and fellow supervisor, testified that Plaintiff was not able to guide and counsel her employees because she did not know how to do her job. (Ct. Rec. 56-3 at 88, 97.) Ms. Gigler, another supervisor and close friend of Plaintiff, testified that Plaintiff lost focus and was not doing her job. (Ct. Rec. 56 at 109.) In fact, the employees Plaintiff supervised approached Ms. Gigler when they had questions. *Id.* Plaintiff does not challenge either Ms. Marsh or Ms. Gigler's testimony. The facts demonstrate that Plaintiff did not meet Defendant's legitimate employment expectations.

### ii. Factor Four - Similarly-Situated Employees

Plaintiff argues that not only had no other supervisor been terminated for "inefficiencies in her performance," but also that Ms. Stotts helped another supervisor, Ms. Gigler, train her employees, but did not offer to help Plaintiff when she was struggling. (Ct. Rec. 78 at 5.) Defendant responds that Ms. Gigler is not "similarly situated" to Plaintiff because their only link is that both women were supervisors. (Ct. Rec. 89 at 12.)

Individuals are similarly situated when they have similar jobs and display similar conduct. *Vasquez v. County of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003); *see also Illhardt v. Sara Lee Corp.*, 118 F.3d 1151, 1155 (7th Cir. 1997) (finding that a plaintiff "must show that she was treated less favorably than a nonpregnant employee under identical circumstances" in order for a court to draw an inference of employer discrimination); *Lanear v. Safeway Grocery*, 843 F.2d 298, 301 (8th Cir. 1988) (finding that a plaintiff is similarly situated to another when the

ORDER ~ 12

plaintiff and the employee are similarly situated in all relevant respects).

Here, Plaintiff's only evidence that similarly-situated employees were treated more favorably is that Ms. Stotts offered to help Ms. Gigler train her employees but not Plaintiff. As an initial matter, Plaintiff and Ms. Gigler are not similarly situated. Yes, both were supervisors. Yes, both had new employees. But to be similarly situated, the two individuals must have similar jobs *and* display similar conduct. *Vasquez*, 349 F.3d at 641. As Defendant correctly points out, Plaintiff presents no evidence that Ms. Gigler had the same type and number of performance-related issues. Plaintiff failed to monitor an employee for sixty (60) days (Ct. Rec. 56-3 at 95); there is no evidence Ms. Gigler engaged in comparable conduct. Plaintiff also failed to communicate time-sensitive information to Ms. Stotts on two separate occasions (Ct. Rec. 56-2 at 20, 38, and 59); Plaintiff presents no evidence Ms. Gigler engaged in comparable conduct.

Nor can Plaintiff point to any other person in Defendant's employ who was similarly situated and treated more favorably. Moreover, Plaintiff misconstrues Ms. Stotts' testimony that she helped Ms. Gigler but not Plaintiff.

Ms. Stotts, recognizing that Defendant recently hired several new employees, relocated from her office to a cubicle "in the middle of the office, which happened to be in Valerie's [Ms. Geigler] area." (Ct. Rec. 80, Ex. 2 at 111.) Ms. Stotts intended to help train Ms. Gigler's staff and "be there for anyone else." *Id*. Ms. Stotts' central

ORDER ~ 13

location among the employees and willingness to "be there for anyone" does not suggest that Plaintiff was treated less favorably.

Despite the low standard for establishing a prima facie PDA claim, Plaintiff cannot carry her burden on factors two and four.  The Court is nevertheless mindful that the Ninth Circuit has cautioned district courts from conflating "the minimal inference needed to establish a prima facie case with the specific, substantial showing [a plaintiff] must make at the third stage of the *McDonnell Douglas* inquiry to demonstrate that [an employer's] reasons for [the discriminatory conduct] were pretextual. *Aragon v. Republic Silver State Disposal*, 292 F.3d 654, 659 (9th Cir. 2002).  So out of an abundance of caution, the Court proceeds through the *McDonnell Douglas* burden-shifting analysis.

### 2. Legitimate, Nondiscriminatory Reason

In step two, the burden shifts to Defendant to demonstrate that it had a legitimate, nondiscriminatory reason for its adverse employment action.  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1981).

Here, Defendant demoted Plaintiff based on poor job performance. (Ct. Rec. 53 at 7.)  Poor job performance is a valid basis for demotion. *See Conley v. City of Findlay*, 2008 U.S. App. LEXIS 2382 (6th Cir. Jan. 28, 2008) (finding that terminating an employee because of unacceptable job performance is a legitimate, nondiscriminatory reason for termination).

### 3. Pretext

Because Defendant articulated a valid reason for demoting Plaintiff, the presumption of unlawful discrimination "simply drops out of the picture." *St. Mary's Honor Ctr.*, 509 U.S. at 511.  Plaintiff now bears

ORDER ~ 14

the burden to demonstrate that Defendant's stated reason for the demotion
was false and that the true reason was unlawful sex discrimination. *Id.*
at 507-08; *Lindahl v. Air France*, 930 F.2d 1434, 1437 (9th Cir. 1991).
To avoid summary judgment, a plaintiff "must do more than establish a
prima facie case and deny the credibility of the [defendant's] witnesses"
- the plaintiff must produce "specific, substantial evidence of pretext."
*Wallis*, 26 F.3d at 890.

Here, Plaintiff produced no admissible meaningful evidence
demonstrating that Defendant's proffered explanation for Plaintiff's
demotion was false.  As discussed, Defendant cited numerous legitimate
bases for Plaintiff's demotion.  Moreover, Plaintiff worked in an office
comprised almost entirely of women of child-bearing age.  The office had
no history of pregnancy discrimination - Ms. Stotts herself has children.
And also as discussed, Plaintiff cannot point to any similarly-situated
employees who were treated more favorably.

Plaintiff's performance deficiencies predated her pregnancy,
continued through her pregnancy, and caused her to be demoted in February
2006.  Based on the admissible evidence, Plaintiff has not come forward
with "specific, substantial evidence of pretext." *Wallis*, 26 F.3d at
890.  Summary judgment on Plaintiff's PDA claim is proper.

**D. Washington Law Against Discrimination Claim**

In addition to her PDA claim, Plaintiff also alleges Defendant
violated the Washington Law Against Discrimination ("WLAD"), RCW 49.60,
et seq.  (Ct. Rec. 1 at 4.)   WLAD claims are analyzed using the
*McDonnell Douglas* burden-shifting analysis. *Marquis v. City of Spokane*,
130 Wn.2d 97, 113 (1996).  Because the Court finds Plaintiff failed to

1  establish a prima facie case under the PDA after applying the *McDonnell*
2  *Douglas* burden-shifting analysis, Plaintiff's WLAD must necessarily fail
3  as well.

**E. Wrongful Discharge in Violation of Public Policy**

5      Defendant argues that Plaintiff's wrongful discharge in violation
6  of public policy claim is improper because this tort is reserved for
7  situations where the WLAD does not apply - here, the WLAD does apply, but
8  Plaintiff cannot establish a prima facie case.  (Ct. Rec. 53 at 11.)
9  Plaintiff responds that Washington courts have recognized claims for
10 wrongful discharge in violation of public policy based on pregnancy
11 discrimination.  (Ct. Rec. 78 at 13.)

12     For support, Plaintiff relies on *Roberts v. Dudley*, 140 Wn.2d 58
13 (2000).  In *Roberts*, the Washington Supreme Court examined "whether an
14 employee who lacks a statutory remedy for wrongful discrimination may
15 nevertheless assert the common-law tort of wrongful discharge."  *Id*. at
16 60.  The plaintiff in *Roberts* lacked a statutory remedy under the WLAD
17 because the statute specifically excludes employers with fewer than eight
18 employees - the employer in *Roberts*, a veterinary clinic, never employed
19 more than eight employees.  *Id*. at 70.  The court in *Roberts* concluded
20 the plaintiff's wrongful discharge claim was proper because there is a
21 clear public policy against sex discrimination.  *Id*. at 77.

22     Here, unlike *Roberts*, Plaintiff did have a statutory remedy under
23 the WLAD because Defendant employed more than eight employees.  Defendant
24 correctly states that the Washington Supreme Court has not permitted a
25 plaintiff to allege a sex discrimination claim under both the WLAD and
26 the common-law tort of wrongful discharge in violation of public policy

ORDER ~ 16

1   - the claims are entirely duplicative.  Because Plaintiff had a statutory

2   remedy for sex discrimination under the WLAD - which she utilized -

3   summary judgment is appropriate on this claim.

**III. Conclusion**

Accordingly, **IT IS HEREBY ORDERED:**

1. Defendant's Motion to Strike **(Ct. Rec. 91)** is **GRANTED** (any statement by Ms. Maley made after she left Defendant's employ) and **DENIED** (as to rest) **IN PART**

2. Defendant's Motion for Summary Judgment **(Ct. Rec. 52)** is **GRANTED**;

3. Judgment shall be entered in Defendant's favor;

4. All pending hearing and trial dates are stricken;

5. All remaining pending motions are denied as moot; and

6. This file shall be closed.

**IT IS SO ORDERED.**  The District Court Executive is directed to enter Order and provide copies to counsel.

**DATED** this ___28th___ day of April 2008.


S/ Edward F. Shea
_____
EDWARD F. SHEA
United States District Judge


Q:\Civil\2007\31.MSJ.wpd

ORDER ~ 17